**E-Filed 12/10/2010**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| EVELYN SABBAG, Derivatively on Behalf of AKEENA SOLAR, INC., <br><br>    Plaintiff, <br><br>    v. <br><br> BARRY CINNAMON, GARY EFFREN, EDWARD ROFFMAN, JON WITKIN, GEORGE LAURO, and DAVID WALLACE, <br><br>    Defendant, <br><br> -and- <br><br> AKEENA SOLAR, INC., a Delaware Corporation, <br><br>    Nominal Defendant. | Case Number 5:10-cv-02735-JF (HRL) <br><br> ORDER[1] RE MOTION TO DISMISS AND/OR STAY <br><br> [Docket Nos. 31, 50] |

## I. BACKGROUND

Plaintiffs Evelyn Sabbag, Vincent and Audrey Cilurzo, Donald Triskett, Daniel Jacquez, and John R. Klein (collectively, "Plaintiffs") are shareholders of Nominal Defendant Akeena Solar, Inc. ("Akeena Solar"). They bring this derivative action on behalf of the company against

---

[1] This disposition is not designated for publication in the official reports.

Case No. 5:10-cv-02735-JF (HRL)
ORDER RE MOTION TO DISMISS AND/OR STAY
(JFEX1)

Defendants Barry Cinnamon, Gary Effren, Edward Roffman, Jon Witkin, George Lauro, and David Wallace (collectively, with Akeena Solar, "Defendants"). Cinnamon is the founder, CEO, Secretary and Chairman of Akeena Solar, and the other named defendants are past or current directors and officers of the company. ( Consolidated Compl. ¶¶ 18-24.)  The instant action is one of several premised on similar allegations. On May 18, 2009, Sharon Hodges filed a private securities class action complaint against Akeena Solar, Cinnamon, and Effren in this district (the "PLSRA action"). Hodges alleged that between 2007 and early 2008, the defendants misrepresented (1) the extent of the "backlog" of orders that Akeena Solar had received, (2) that Comerica Bank had increased an existing line of credit to Akeena Solar from $7.5 million to $25 million, and (3) the value of an agreement pursuant to which Akeena Solar licensed its "Andalay" technology to a company called Suntech. (Case No. 5:09-cv-02147, Docket No. 1.)  On December 11, 2009, Hodges filed an amended complaint, adding additional detail to her previously asserted claims and asserting new allegations, including (4) that Defendants concealed details of a supply agreement with Suntech that required Akeena Solar to pay a premium price for "Andalay" solar panels that Suntech was to manufacture for Akeena Solar, (5) that Defendants concealed defects in the "Andalay" technology, and (6) that Cinnamon engaged in insider trading in order to fund a divorce settlement with a former spouse. (Case No. 5:09-cv-02147, Docket No. 20.)  These false and misleading statements allegedly caused an artificial inflation of Akeena Solar's stock price, and Hodges claims that the defendants breached fiduciary duties, have been unjustly enriched, and have wasted corporate assets. On May 28, 2010, Chris Dulgarian filed a separate derivative action on behalf of Akeena Solar against Cinnamon, Effren, Roffman, Witkin, Lauro, and Pradeep Jotwani (a current director of Akeena Solar) in the Santa Clara Superior Court (the "state derivative action"), asserting substantially the same claims as are asserted in Hodges' amended PLSRA complaint. (*See* Defs.' MTD, Ex. D.)

Between June 22, 2010 and August 2, 2010, the named Plaintiffs in the instant action filed five separate complaints, each containing substantially the same allegations as those asserted by Hodges and Dulgarian. The complaints were consolidated on August 25, 2010. Plaintiffs filed the operative Consolidated Complaint on September 10, 2010, alleging breach of fiduciary duties

and waste of corporate assets and seeking indemnification and contribution from the individual Defendants. Plaintiffs also allege that Akeena Solar issued a proxy statement on September 11, 2008, which included a proposal to elect Defendants as directors of the company, and that this proxy statement violated § 14(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78n(a), because it failed to disclose that Defendants had made misrepresentations and that Cinnamon had engaged in insider trading. (Consolidated Compl. ¶ 125.)[2]

Defendants move to dismiss the Consolidated Complaint, or in the alternative to stay the instant action pending resolution of the state derivative action. Plaintiffs oppose the motion. At the Court's direction, the parties also filed supplemental briefing with respect to the timeliness of Plaintiffs' § 14(a) claim. The Court has considered the parties' moving papers and oral arguments of counsel presented at the hearing on December 3, 2010. For the reasons discussed below, the § 14(a) claim will be dismissed, and the remainder of the instant action will be stayed.

## II. TIMELINESS OF THE § 14(a) CLAIM

**A.    Legal Standard**

Dismissal under Fed. R. Civ. P. 12(b)(6) "is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). For purposes of a motion to dismiss, the plaintiff's allegations are taken as true, and the court must construe the complaint in the light most favorable to the plaintiff. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969). Where the facts and dates alleged in a complaint indicate a claim is barred by the statute of limitations, the complaint fails to state a claim because the action is time-barred. *Jablon v. Dean Witter & Co.*, 614 F2d 677, 682 (9th Cir. 1980). On the other hand, where the running of the statute cannot be determined from the face of the complaint and matters judicially noticeable, a motion for summary judgment is the proper procedure. *See Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1206 (9th Cir. 1995); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

---

[2] The § 14(a) claim first appeared in Plaintiff Sabbag's amended complaint, which was filed on August 6, 2010.

3

**B.     Discussion**

    **1.     Statute of limitations**

Section 14(a) authorizes a claim for injury arising from the filing of a fraudulent proxy statement. 15 U.S.C. § 78n(a). Claims under § 14(a) must be "brought within one year after the discovery of the facts constituting the cause of action and within three years after such cause of action accrued." *See* 15 U.S.C. § 78r(c); *Westinghouse Elec. Corp. v. Franklin*, 993 F.2d 349, 353 (3d Cir. 1993) (holding that § 14(a) claims are governed by the "one-year/three-year statute of limitations" from 15 U.S.C. § 78r and 15 U.S.C. § 78i ); *Ceres Partners v. GEL Assocs.*, 918 F.2d 349, 353 (2d Cir. 1990) (applying the one-year/three-year statute of limitations from 15 U.S.C. § 78r(c) and 15 U.S.C. § 78i(e) to claims under § 14 because of the substantial overlap between violations under those sections and § 14); *see also Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 363 (1991) (holding that, prior to the enactment of 28 U.S.C. § 1658, claims under § 10(b) of the Securities Exchange Act must be commenced within one year after the discovery of the facts constituting the violation or within three years after such violation).

"[E]very Court of Appeals to decide the matter [has] held that 'discovery of the facts constituting the violation' occurs not only once a plaintiff actually discovers the facts, but also when a hypothetical reasonably diligent plaintiff would have discovered them." *Merck & Co. v. Reynolds*, 130 S. Ct. 1784, 1795 (2010). The "facts constituting the violation" that must be discovered include the facts supporting the necessary elements of the violation including the mental state. *See Merck & Co. v. Reynolds*, 130 S. Ct. 1784, 1796 (2010) (comparing 28 U.S.C. § 1658(b)(1) to other precedents concerning "discovery" in the context of limitations statutes and concluding that "discovery of the facts constituting the violation" with respect to a § 10(b) violation includes the discovery of the scienter). To establish a violation under § 14(a), a plaintiff must allege that (1) a proxy statement contains "a false or misleading declaration of material fact, or . . . an omission of material fact that makes any portion of the statement misleading," (2) the "misstatement or omission was made with the requisite level of culpability," and (3) "it was an essential link in the accomplishment of the proposed transaction." *Desaigoudar v. Meyercord*, 223 F. 3d 1020, 1022 (9th Cir. 2000).

While Sarbanes-Oxley provides a more generous statute of limitations for claims that "involve[] a claim of fraud, deceit, manipulation, or contrivance," 28 U.S.C. § 1658, this extended limitations period does not apply to § 14(a) claims because such claims do not require scienter or a showing of fraudulent intent. *See In re Global Crossing, Ltd. Sec. Litig.*, 313 F. Supp. 2d 189, 196-97 (S.D.N.Y. 2003). Instead, "[t]he required state of mind for a § 14 claim is negligence, . . . not knowledge or deliberate recklessness." *In re VeriSign, Inc., Derivative Litig.*, 531 F. Supp. 2d 1173, 1211 (N.D. Cal. 2007) (citing *In re McKesson HBOC, Inc. Sec. Litig.*, 126 F.Supp. 2d 1248, 1267 (N.D. Cal. 2000)); *see also In re McKesson HBOC*, 126 F. Supp. 2d at 1263 (citing *Gerstle v. Gamble-Skogmo, Inc.*, 478 F.2d 1281 (2d Cir. 1973); 4 Louis Loss & Joel Seligman, Securities Regulation 2082-2084 (3d ed. 1990 & Supp. 1999) (collecting cases)) (noting that "the weight of authority rejects a scienter standard for claims under Section 14").

### 2. When the limitations period commenced

Defendants contend that Plaintiffs knew – or a reasonably diligent plaintiff would have known – of the facts constituting the alleged § 14(a) violation not later than May 15, 2009. As Defendants point out, Plaintiffs allege that on "May 15, 2009, Akeena [Solar] had finally disclosed the truth about all of [D]efendants' misleading statements concerning [Akeena Solar's] reported backlog, the lack of success of the Andalay system and the supply agreements with Suntech, the purported increase in [Akeena Solar's] line of credit with Comerica, and the Suntech licensing agreement . . . ." (Consolidated Compl. ¶ 50.) Defendants also note that Hodges' PLSRA complaint filed May 18, 2009 asserts several of the same claims as Plaintiffs allege here. At oral argument, Plaintiffs conceded that no new facts have come to light since May 2009. They argue nonetheless that the limitations period did not begin to run until December 11, 2009, when Hodges filed her amended PLSRA complaint.

Plaintiffs contend that while Hodges' amended pleading did not reveal previously unknown or inaccessible facts, it developed for the first time a cohesive theory of Defendants' wrongdoing, including the motivation behind Cinnamon's insider trading scheme. In particular, Hodges alleged for the first time that Cinnamon had entered into a divorce settlement that required him to pay his wife $1.875 million before January 31, 2008. (Case No. 5:09-cv-02147-

5

JW; Docket No. 20, ¶ 16.) If he could not meet this deadline, the settlement required Cinnamon to transfer more than $2.3 million in Akeena Solar stock to his wife. (*Id.*) The stock was to be sold over the following six months, and if it did not sell for at least $1.875 million, Cinnamon had to make up the difference. (*Id.*) Cinnamon allegedly made a series of misleading statements designed to increase the value of Akeena Solar's shares in early January 2008, when he ultimately sold shares valued at more than $5.6 million. (*Id.* at ¶¶ 20-21.)

However, the timeliness inquiry focuses not on when Plaintiffs became aware of a particular legal theory but on when they knew or should have known of the *facts* constituting the violation. While Hodges did not include certain allegations in her complaint until December 11, 2009, it is clear that the facts she alleged would have been known by a reasonably diligent plaintiff as of May 2009. For example, Cinnamon disclosed on December 13, 2007 that he planned to sell Akeena Solar shares in January "in order to satisfy financial obligations incurred by Mr. Cinnamon as part of his 2006 Divorce Settlement." (Akeena Solar Form 8-K (December 17, 2007), *available at* http://www.sec.gov/Archives/edgar/data/1347452/000114420407067723/ v097413_8-k.htm.)[3] Whether the § 14(a) claim relates to an overstated backlog of orders, misrepresented licensing or supply agreements, misrepresented lines of credit, concealed product defects, or insider trading, Plaintiffs themselves allege that "Akeena [Solar] had finally disclosed the truth about all of [D]efendants' misleading statements" as of May 2009. (Consolidated Compl. ¶ 50.)

Thus, as of May 2009, a reasonably diligent plaintiff would have known that Defendants had made misrepresentations before the September 11, 2009 proxy statement was issued, that Cinnamon may have been motivated to make those misrepresentations in order to fund his divorce settlement through stock sales, that neither the misrepresentations nor the insider trading were

---

[3] Judicial notice of this document is appropriate because Cinnamon's disclosure on December 13, 2007 "is capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." FED. R. EVID. 201(b). The Court may consider this information in connection with the motions to dismiss. *See Tellabs*, 551 U.S. at 322 ("[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.")

disclosed in the September 11, 2009 proxy statement, and that the individual Defendants likely would not have been reelected as directors had the appropriate disclosures been made. Accordingly, the § 14(a) claim is time-barred.

### III.  WHETHER TO DISMISS OR STAY THE ACTION

Defendants contend that this Court should stay or dismiss the instant action pursuant to *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 818 (1976), because it is substantially similar to the state derivative action. Plaintiffs argue that the instant case is not substantially similar to the state derivative action and does not involve any "exceptional circumstances" that warrant application of the *Colorado River* abstention doctrine. Defendants also contend that the instant action should be stayed pursuant to *Landis v. North American Co.*, 299 U.S. 248, 254-55 (1936).

**A.    The *Colorado River* doctrine**

In exceptional circumstances, it is appropriate for a federal court to abstain from hearing a case that is substantially similar to a parallel proceeding in state court. *Colorado River*, 424 U.S. at 818. However, "'[it] was never a doctrine of equity that a federal court should exercise its judicial discretion to dismiss a suit merely because a State court could entertain it." *Id.* (quoting *Ala. Pub. Serv. Comm'n v. S. R. Co.*, 341 U.S. 341, 361 (1951)). "Abstention from the exercise of federal jurisdiction is the exception, not the rule." *Id.* In *Colorado River*, the Supreme Court articulated four factors for determining whether sufficiently exceptional circumstances exist to warrant abstention: (1) whether either the state or federal court has exercised jurisdiction over a *res*; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; and (4) the order in which the forums obtained jurisdiction. *Id.* The Court subsequently added two more considerations: (5) whether federal or state law controls and (6) whether the state court is adequate to protect the parties' rights. *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp*, 460 U.S. 1, 24-27 (1983). The Ninth Circuit and other circuits have added that district courts also may consider (7) whether the federal plaintiff is engaged in forum shopping. *Nakash v. Mariano*, 882 F.2d 1411 (9th Cir. 1989). A district court invoking *Colorado River* may choose to either stay or dismiss the case. *See Cone*, 460 U.S. at 28.

7

### 1. Whether the instant action is substantially similar to the state derivative action

The Ninth Circuit has held that "exact parallelism . . . is not required in order to apply the *Colorado River* doctrine. It is enough if the two proceedings are 'substantially similar.'" *Nakash*, 882 F.2d at 1416 (citations omitted). Proceedings are "substantially similar when "'substantially the same parties are contemporaneously litigating substantially the same issues in another forum.'" *Travelers Cas. and Sur. Co. of America v. Comerica Bank*, No. CIV. S-08-366 FCD/KJM, 2009 WL 2136922, at *3 (E.D. Cal. July 15, 2009) (quoting *Interstate Material Corp. v. City of Chicago*, 847 F.2d 1285, 1288 (7th Cir. 1988)). The instant action and the state derivative action share five common defendants and involve the same factual allegations of wrongdoing. However, Plaintiffs argue that the instant action differs significantly from the state derivative action because it includes the § 14(a) claim, an additional defendant (Wallace), and a claim for indemnity.

As discussed above, the § 14(a) claim is time-barred. Although the inclusion of Wallace as a defendant and the claim for indemnity are unique to the instant action, application of the *Colorado River* doctrine does not require an exact duplication of the parties involved or the claims asserted. *Interstate Material*, 847 F.3d at 1288. Plaintiffs have not shown that the state court would lack jurisdiction over a claim against Wallace or for indemnity. The core issue of whether Akeena Solar's directors made misleading statements is fully presented to the state court, and it is not at all uncommon for the question of indemnity to be resolved once liability has been established. Accordingly, the Court concludes that the two actions are "substantially similar."

### 2. Whether exceptional circumstances exist

As discussed above, the Court must consider a number of factors in determining whether there are exceptional circumstances that warrant dismissal or stay pursuant to *Colorado River*. Defendants focus on five of the factors: (1) the desirability of avoiding piecemeal litigation, (2) the order in which the forums obtained jurisdiction, (3) whether federal or state law controls, (4) whether the state court proceeding is adequate to protect the parties' rights, and (5) whether the federal plaintiff is engaged in forum shopping.

### a. The desirability of avoiding piecemeal litigation

"'Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results.'" *Travelers Indem. Co. v. Madonna*, 914 F.2d 1364, 1369 (9th Cir. 1990) (quoting *Am. Int'l Underwriters, Inc. v. Continental Ins. Co.*, 843 F.2d 1253, 1258 (9th Cir. 1988)). As discussed above, the issues in this case are virtually identical to those in the state derivative action. However, because a danger of inconsistent judgments exists any time there are parallel actions that are substantially similar, the mere potential of inconsistent judgments is not "exceptional." *See Travelers*, 914 F.2d at 1369 ("A correct evaluation of this factor involves considering whether exceptional circumstances exist which justify *special* concern about piecemeal litigation.") (emphasis added). Defendants claim that the issue of demand futility, which is relevant in both actions, already has been briefed fully in the state court. However, on the current record, the Court cannot conclude that the instant case presents any "exceptional" concerns with respect to piecemeal litigation.

### b. The order in which the forums obtained jurisdiction

"'Priority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions.'" *Travelers*, 914 F.2d at 1370 (quoting *Cone*, 460 U.S. at 21). Dulgarian filed his derivative action in the state court on May 28, 2010. The earliest of the consolidated federal derivative actions was filed on June 22, 2010, less than a month later. Plaintiffs contend that this difference in timing is insignificant. In *Travelers*, the Ninth Circuit concluded that a district court did not abuse its discretion in concluding that this factor was "unhelpful" when the actions were filed only three days apart. 914 F.2d at 1370. In *Brown v. Moll*, No. C 09-05881 SI, 2010 WL 2898324, at *3 (N.D. Cal. July 21, 2010), the court determined that the fact that the state actions were filed in November 2009, "a few weeks" before the federal action was filed on December 9, 2009, did not weigh in favor of the imposition of a stay. Defendants point out that in this instant the state court has set a hearing on their motion with respect to demand futility and that the plaintiffs in the state derivative action have served a document request. However, while the earliest of Plaintiffs' individual actions was filed twenty-five days after the state derivative action was filed and there has been some marginal

1  progress in the state derivative action, the Court cannot conclude that this factor weighs in favor
2  of a dismissal or stay, as the difference in time is relatively small and the amount of progress in
3  the state derivative action has been minimal.

         **c.     Whether federal or state law controls**

Defendants point out correctly that if the § 14(a) claim is dismissed, all of Plaintiffs' claims arise under state law. However, "the 'presence of state-law issues may weigh in favor of [] surrender' only 'in some rare circumstances.'" *Travelers*, 914 F.2d at 1370 (quoting *Cone*, 460 U.S. at 26). In *Travelers*, the Ninth Circuit held that "routine issues of state law," such as misrepresentation, breach of fiduciary duty, and breach of contract, "which the district court is fully capable of deciding," do not present "rare circumstances." *Id.* Accordingly, the Court cannot conclude that this factor weighs in favor of dismissal or stay.

         **d.     Whether the state court proceeding is adequate to protect the parties' rights**

Defendants contend that the state derivative action potentially will provide broader relief to the parties because it involves at least some different claims and also includes a defendant – Jotwani – who is not named in the instant case. However, this action includes a defendant – Wallace – who is not named in the state derivative action. Moreover, "it appears that this Circuit has not applied this factor against the exercise of federal jurisdiction, only in favor of it," and the Second Circuit has held that "the possibility that the state court proceeding might adequately protect the interests of the parties is not enough to justify the district court's deference to the state action." *Id.* (quoting *Bethlehem Contracting Co. v. Lehrer/McGovern, Inc.*, 800 F.2d 325, 328 (2d Cir. 1986)). Accordingly, the Court cannot conclude that this factor weighs in favor of a dismissal or stay.

         **e.     Whether the federal plaintiff is engaged in forum shopping**

"[F]orum shopping weighs in favor of a stay when the party opposing the stay seeks to avoid adverse rulings made by the state court or to gain a tactical advantage from the application of federal court rules." *Travelers*, 914 F.2d at 1371 (citing *Nakash*, 882 F.2d at 1417 (discussing avoidance of adverse rulings); *Am. Int'l Underwriters*, 843 F.2d at 1259 (discussing application of

Federal Rules of Evidence)). Defendants claim that Plaintiffs added their § 14(a) claim only after the parties discussed a briefing schedule for a motion to dismiss or stay pursuant to *Colorado River*, (Defs.' Mot. at 18-8:11), suggesting that the claim was added by Plaintiffs only for purposes of preserving a federal forum. In any event, the Court cannot conclude that any of the other factors weigh in favor of a dismissal or stay, and "federal courts may not decline to exercise jurisdiction solely on the basis of forum shopping." *Travelers*, 914 F.2d at 1371 (citing *Fed. Deposit Ins. Corp. v. Nichols*, 885 F.2d 633, 638 (9th Cir. 1989)).

B.   **Whether the instant action should be stayed pursuant to *Landis***

Apart from *Colorado River*, "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Landis*, 299 U.S. at 254-255 (citing *Kan. City S. Ry. v. United States*, 282 U.S. 760, 763 (1931); *Enelow v. New York Life Ins. Co.*, 293 U.S. 379, 382 (1935)). While "[o]nly in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both," both the instant action and the state derivative action were filed derivatively on behalf of the same entity, Akeena Solar. In determining whether to grant a stay, the court must balance "competing interests" and examine (1) "possible damage which may result from the granting of a stay," (2) "the hardship or inequity which a party may suffer in being required to go forward," and (3) "the orderly course of justice measured in terms of the simplifying or complicating of issues, proof and questions of law which could be expected to result from a stay." *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962) (citing *Landis*, 299 U.S. at 254-55).

   1.   **Possible prejudice which may result from a stay**

Defendants argue that a stay will cause no prejudice to any party. Plaintiffs claim that a stay would cause "significant harm to both [P]laintiffs and Akeena [Solar,]" (Pls.' Opp'n at 15:19-20), and would endanger their discovery efforts by delaying the collection of relevant information. However, discovery in the state derivative action will continue irrespective of this

11

Case No. 5:10-cv-02735-JF (HRL)
ORDER RE MOTION TO DISMISS AND/OR STAY
(JFEX1)

1  Court's decision.  While Plaintiffs concede that "delayed financial recovery alone may not
2  demonstrate sufficient harm under *Landis* to preclude the issuance of a stay ," (*Id*. at 16:11-12),
3  they argue that a stay will delay injunctive relief that could reshape Akeena Solar's corporate
4  governance procedures and protect it better from future violations and wrongdoing.  This
5  argument is unpersuasive, however, as the plaintiffs in the state derivative action seek similar
6  injunctive relief on behalf of Akeena Solar.

　　**2.    The hardship or inequity which a party may suffer in being required to go forward**

9  　　Defendants claim that if the instant action moves forward, they will suffer "undue
10 hardship" by having to litigate similar issues in two parallel actions.  The Ninth Circuit has held
11 that "[t]o be sure, [in the absence of a stay, the defendant] must proceed toward trial in the suit in
12 the district court, but being required to defend a suit, without more, does not constitute a 'clear
13 case of hardship or inequity' within the meaning of *Landis*."  *Lockyer v. Mirant Corp.*, 398 F.3d
14 1098, 1112 (9th Cir. 2005).  Potentially, however, *Landis* requires a defendant to show a "clear
15 case of hardship or inequity" only "if there is []a fair possibility that the stay for which he prays
16 will work damage to some one else."  299 U.S. at 255.  Further, in a derivative action, the
17 shareholder-plaintiffs ostensibly are suing on behalf of the corporation to remedy wrongs
18 committed against the corporation.  Proceeding with two separate derivative actions, each seeking
19 to remedy the same wrongs, serves only to injure the corporation and its shareholders by forcing
20 the corporation to incur duplicative litigation expenses.  Under the circumstances, the Court finds
21 that this factor favors a stay, and that  Akeena Solar would suffer undue hardship if it is required
22 to proceed with the instant case.

　　**3.    Whether a stay will promote the orderly course of justice**

24 　　Finally, Defendants contend that staying the instant action would promote the orderly
25 course of justice because several issues that must be decided in the state derivative action will be
26 determinative of the factual issues in this case and will have preclusive effect on the claims in this
27 action – assuming of course that the state court were to decide these issues first.  Although "the
28 mere potential for conflict in the results of adjudications does not, without more, warrant staying

exercise of federal jurisdiction," *AmerisourceBergen Corp. v. Roden,* 495 F.3d 1143, 1151 (9th Cir. 2007), at present it appears that the state court is fully capable of adjudicating the remaining issues between the parties, and parallel litigation of the instant action would serve no useful purpose.

### IV. CONCLUSION

In light of the foregoing discussion, the § 14(a) claim will be dismissed as time-barred. Because both the instant action and the state derivative action are brought on behalf of Akeena Solar and seek to remedy the same wrongs, the Court concludes that requiring Akeena Solar to go forward with this case would result in undue hardship both to the corporation and to the shareholders whom derivative suits are intended to benefit. Accordingly, the instant action will be stayed until further order of the Court.

IT IS SO ORDERED.

DATED: 12/10/2010

_____
JEREMY FOGEL
United States District Judge

13
Case No. 5:10-cv-02735-JF (HRL)
ORDER RE MOTION TO DISMISS AND/OR STAY
(JFEX1)